**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-13307

_____

SHANNON WALLER, JR.,

*Plaintiff-Appellant,*

*versus*

BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF
GEORGIA,
TERRI MILLER,
JASMINE BROWN,
SHANOYA CORDEW,
MARINA SPEARS, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:23-cv-00232-MTT

_____

Before JORDAN, JILL PRYOR, and KIDD, Circuit Judges.

JORDAN, Circuit Judge:

Shannon Waller, Jr., was a respiratory therapy student at Middle Georgia State University, an institution in the University System of Georgia. Following an incident at his clinical externship, an MGS disciplinary panel found Mr. Waller responsible for endangering the health or safety of a patient. As punishment, the panel gave him an "F" in his clinical externship class.

Mr. Waller then brought a complaint against the Board of Regents and some of its employees for breach of contract and disability discrimination, among other things. The district court dismissed the contract claim on state sovereign immunity grounds. And it dismissed the discrimination claims for failure to state a claim. After review, and with the benefit of oral argument, we affirm.

## I

We take as true the following allegations, which are pled in Mr. Waller's operative complaint or contained in its attached exhibits. *See Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1263–64 (11th Cir. 2022) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

## A

On June 8, 2020, MGS sent Mr. Waller a letter tentatively accepting him into its Respiratory Therapy Entry-Level Degree Program. It read in relevant part:

24-13307                  Opinion of the Court                      3

Dear Shannon Waller,

Congratulations! You have been tentatively accepted into the Fall 2020 Bachelor of Science in Respiratory Therapy Entry-Level Degree Program at Middle Georgia State University. This acceptance is conditional upon your successfully completing the prerequisites as outlined in the Middle Georgia State academic catalog and as advised. . . . You will also need to contact the Office of Admissions 30 days prior to the first day of class to ensure that all admission requirements have been met. . . .

An orientation to the program will be held on August 12 & 13 from 8:00am until 5:00pm. Your attendance for the entire orientation period is required to move forward within the program. . . . I have attached some important information regarding our program which you will want to review and act upon as needed. Your signature on this acceptance letter will serve as acceptance of the content within that document. . . .

Please return a signed copy of this letter by scanning and emailing it . . . before June 15, 2020, as your commitment to begin Fall Semester 2020. . . .

The letter was signed by Teresa J. Miller, the Chair of the Respiratory Therapy Program. The same day, Mr. Waller signed and returned the letter. [1]

---

[1] The operative complaint does not identify what document was attached to the admission letter. Nor does it set out what that document says.

MGS then provided Mr. Waller with a copy of the Respiratory Therapy Student Handbook. The Handbook states that "you [the student] are responsible for reading, understanding, and abiding by the . . . Student Code of Conduct." The Code of Conduct lays out specific procedures and student rights in disciplinary and enforcement proceedings. The Handbook also states: "If a student's behavior becomes a problem in the classroom setting, the procedures for disciplinary action listed in the Middle Georgia State University Handbook will be followed."

The Handbook is not signed by an employee of MGS. On August 16, 2020, Mr. Waller signed the following verification of receipt: "I hereby certify that I have received a copy of the Middle Georgia State University Respiratory Therapy Handbook, have read and understand the material and will adhere to the policies."

Christopher Blake, the President of MGS, signed the Constitution of the Student Government Association. The Constitution provides that "[e]ach member shall . . . uphold . . . the Middle Georgia State University Student Handbook and Code of Conduct."

**B**

To graduate from MGS with a degree in respiratory therapy, Mr. Waller had to pass RESP 4125—a class where students participate in a clinical externship. Once enrolled in RESP 4125, he was placed at Houston Healthcare in Warner Robins, Georgia, to complete the clinical component of the class.

Mr. Waller suffers from attention deficit disorder, anxiety, and depression. Ms. Miller and Jasmine Brown, the professor of

the RESP 4125 class, were aware of Mr. Waller's conditions. They also knew that Mr. Waller sees a counselor and takes medication for his conditions.

After Mr. Waller began his externship, one of his clinical instructors told Ms. Miller and Ms. Brown that he "display[ed] a sort of nervous anxiety" and made "some inappropriate statements during his clinical rotations that is making the staff uncomfortable." Similarly, three Houston Healthcare employees believed that Mr. Waller's performance was unsatisfactory due to behavior related to his mental health conditions. They too communicated their opinions of Mr. Waller to Ms. Miller, Ms. Brown, and others.

Following those comments, Ms. Miller and Ms. Brown had discussions with Dr. Michael Stewart, the Associate Vice-President for Student Affairs, and Dr. Tara Underwood, the Dean of Health and Natural Sciences, regarding Mr. Waller's conditions and behavior. Dr. Stewart required Mr. Waller to provide documentation from a licensed psychiatrist or psychologist certifying that he was not a danger to himself or others and that he was able to withstand the stress of the clinical setting, including the care of neonatal, pediatric, and adult critical care patients. Mr. Waller complied with Dr. Stewart's request.

On April 21, 2022, a patient at Houston Healthcare with a tracheostomy twice went into cardiac arrest. Mr. Waller says that he "blew the whistle" regarding the facility's failure to use the appropriately sized cannula—a type of tube—and that the heart attacks were caused in part by the wrong-sized cannula. Following

this incident, Ms. Miller suspended Mr. Waller indefinitely from his clinical rotation, and Houston Healthcare barred him from its facilities.

Shanoya Cordew, MGS' Student Conduct Coordinator, sent Mr. Waller a letter charging him with violations of the Student Code of Conduct arising from the incident. According to the letter, Mr. Waller allegedly made changes to ventilators without notifying a therapist, placed a patient on "BiPAP" without supervision, "[p]erform[ed] an ABG [an arterial blood gas test] backwards" after being told not to perform the test in that manner, and engaged in other misconduct. The letter stated that the proposed sanctions for these violations were a grade of "F" in RESP 4125 and dismissal from the Respiratory Therapy Program. The letter also informed Mr. Waller of some of his rights under MGS' policies, including the right to a hearing and to call witnesses.

MGS convened a hearing, at which Ms. Miller and Ms. Brown served as the complainants. After hearing the evidence, a three-person panel unanimously found that Mr. Waller was responsible for "[a]ctions and/or behaviors that endanger health/safety." The panel decided that, as punishment, Mr. Waller should receive a grade of "F" in RESP 4125.

Mr. Waller contends that this hearing did not conform to the standards set forth in the Student Code of Conduct and other written policies of MGS. For example, Mr. Waller alleges that before the hearing he "attempted to obtain a complete collection of the evidence against him, lists of witnesses, investigative reports,

notes, and summaries . . . but was unable to do so." He submitted questions for Ms. Cordew to ask Ms. Miller and Ms. Brown, but she did not ask them. And Ms. Miller and Ms. Brown presented evidence of uncharged conduct that occurred before or after the incident on April 21, 2022, and did so "in a way that muddled all [the] evidence together."

Following the hearing, Mr. Waller appealed the panel's decision to Ms. Cordew. She affirmed the decision. Then Mr. Waller appealed to the President of MGS. He also affirmed. Finally, Mr. Waller sought discretionary review from the Vice-Chancellor of Legal Affairs for the University System of Georgia. The decision was affirmed again.

## C

Mr. Waller filed this lawsuit in the Superior Court of Fulton County, Georgia, against the Board of Regents, Houston Healthcare, and several employees of each entity. The defendants jointly removed the action to federal court. Mr. Waller then amended his complaint twice. His operative complaint asserted a breach of contract claim against the Board, a claim under 42 U.S.C. § 1983 against some employees of the Board, two disability discrimination claims against all defendants, and a tortious interference claim against Houston Healthcare.

For his contract claim, Mr. Waller asserts that "[t]he Student Code of Conduct, the Academic Conduct Procedures, [his] syllabus for RESP 4125 . . . , and other written policies" of MGS "constitute

written contracts with [its] students." He posits that, "[i]n consideration for their ability to attend [MGS], along with payment of tuition and other fees, students were required to sign these written agreements that they would follow these written policies and procedures[.]" And, he says, the President of MGS bound the Board to an agreement to follow these policies by signing the Constitution of the Student Government Association. Thus, when the Board failed to follow the requirements of the Student Code of Conduct and Academic Conduct Procedures, it breached its written contract with him.[2]

The Board and its employees filed a motion to dismiss all the claims against them. The district court granted it in full. The court dismissed the contract claim because, under Georgia law, the Board enjoys sovereign immunity from suit. Though the state has waived its sovereign immunity for breach of a written contract, the court determined that to come within that waiver a plaintiff must allege that the parties signed contemporaneous writings containing all the necessary terms of a contract, and Mr. Waller had not done

---

[2] On appeal, Mr. Waller argues that his admission letter and the Respiratory Therapy Program Student Handbook each independently constitute written contracts or, alternatively, that together they formed a single written contract. His brief says that, "[w]hile [the Student Government Association] Constitution could potentially be relevant to [his] claims on remand and may form yet another binding contract between [him] and [the Board], it is not necessary to consider that document in order to find the existence of a valid written contract[.]" Because Mr. Waller has not raised any argument pertaining to the Student Government Association Constitution on appeal, we do not address that document.

that.  As for the discrimination claims, the court concluded that Mr. Waller failed to state a claim because the complaint did not allege that the Board's employees took any action because of his disability.

Litigation briefly proceeded against Houston Healthcare and its employees, but Mr. Waller voluntarily dismissed his claims against them with prejudice.  Mr. Waller now appeals, challenging the district court's dismissal of his contract and discrimination claims.

## II

We begin with Mr. Waller's claim for breach of contract. The sole ground on which the Board sought dismissal of that claim was sovereign immunity.

There is no dispute that the Board is covered by Georgia's sovereign immunity, but Mr. Waller contends that the Board breached a "written contract" and that Georgia has waived its immunity for such claims.  *See* Ga. Const. Art. 1, § 2, ¶ IX(c) ("The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies."); O.C.G.A. § 50-21-1(a) ("The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract existing on April 12, 1982, or thereafter entered into by the state, departments and agencies of the state, and state authorities.").  The Board responds that it did not enter into a written contract with Mr. Waller.

## A

In deciding whether state law provides a party with sovereign immunity from suit, we are "bound by that state court's determination of the substantive limits of the state's sovereign immunity protection." *CSX Transp., Inc. v. Kissimmee Util. Auth.*, 153 F.3d 1283, 1286 (11th Cir. 1998). *Accord Butler v. Gualtieri*, 41 F.4th 1329, 1335 (11th Cir. 2022).[3]

To determine the content of state law, we use the following process under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny. If the highest court of the state has spoken on the issue, we follow its pronouncement. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). But if that court has not spoken, we must predict how it would decide the issue. *See id.* In doing so, we "must apply what [we] find to be the state law after giving 'proper regard' to relevant rulings of other courts of the [s]tate." *Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967). *See generally* 19 Wright & Miller, Fed. Prac. & Proc. Juris. § 4507 & nn.30–32 (3d ed. & Apr. 2026 update).

Although state law sets the substantive boundaries of Georgia's sovereign immunity, "Rules 8 and 12 define the criteria for assessing the sufficiency of a pleading" in federal court. *See Carbone*

---

[3] We note that in limited circumstances, Congress may abrogate a state's sovereign immunity protection to enforce individual rights enshrined in the Fourteenth Amendment. *See Dupree v. Owens*, 92 F.4th 999, 1005 (11th Cir. 2024). In such circumstances, we do not defer to state courts on the substantive limits of the state's sovereign immunity protection. But no such circumstances are present in this case.

*v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). Under Rule 12(b)(6), a court "asks only whether the complaint's factual allegations, if taken as true, 'state a claim that is plausible on its face.'" *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not a "probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted).

Putting these substantive and procedural standards together, the question at this stage is whether Mr. Waller has plausibly alleged that he and the Board entered a "written contract" that waived sovereign immunity within the meaning of Art. 1, § 2, ¶ IX(c) of the Georgia Constitution and O.C.G.A. § 50-21-1(a). Interpreting these two provisions, the Georgia Supreme Court has explained:

> To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate. Unless all of these essential terms are in writing, there is no enforceable written contract for sovereign immunity purposes.

*Dep't of Pub. Safety v. Justice*, 907 S.E.2d 817, 822 (Ga. 2024) (quotation marks and citations omitted).

**B**

Mr. Waller asserts that his admission letter and the Respiratory Therapy Program Student Handbook each independently constitute written contracts. Alternatively, he says that together they form a single written contract.

The Handbook alone is not a written contract for purposes of Georgia's sovereign immunity waiver because no representative or employee of the Board signed or manifested written agreement to be bound by it. The Georgia courts have repeatedly held that the sovereign party's written assent is a necessary condition for the waiver to apply. *See Ga. Dep't of Lab. v. RTT Assocs., Inc.*, 768 S.E.2d 840, 847 (Ga. 2016); *Bd. of Regents of Univ. Sys. of Ga. v. Tyson*, 404 S.E.2d 557, 559 (Ga. 1991); *Patrick v. Bd. of Regents of Univ. Sys. of Ga.*, 855 S.E.2d 746, 749 (Ga. App. 2021); *Bd. of Regents of Univ. Sys. of Ga. v. Barnes*, 743 S.E.2d 609, 611 (Ga. App. 2013), *disapproved on other grounds by Wolfe v. Bd. of Regents of Univ. Sys. of Ga.*, 794 S.E.2d 85 (Ga. 2016); *Bd. of Regents of Univ. Sys. of Ga. v. Ruff*, 726 S.E.2d 451, 455 (Ga. App. 2012).[4]

The admission letter is signed by both Mr. Waller and Ms. Miller, the Chair of the Respiratory Therapy Program at MGS. In

---

[4] In *State v. Federal Defender Program, Inc.*, 882 S.E.2d 257, 274 n.12 (Ga. 2022), and *Justice*, 907 S.E.2d at 822 n.3, the Georgia Supreme Court pretermitted the question of whether a writing must be *signed* to waive sovereign immunity. We need not and do not address that issue because there is nothing in the Handbook that could be construed as a written manifestation of assent by the Board.

24-13307               Opinion of the Court                    13

that sense, this case is different from the scenarios that the Georgia Court of Appeals addressed in *Patrick*, *Barnes*, and *Ruff*. In each of those cases, a student or parent asserted a written contract with the Board, and the Court of Appeals rejected those claims because none of the documents on which the plaintiffs relied were signed by both parties. *See Patrick*, 855 S.E.2d at 749 ("None of the documents were signed by both parties."); *Barnes*, 743 S.E.2d at 611 ("[N]either of these documents was signed by a representative of the Board or a representative of [Valdosta State University.]"); *Ruff*, 726 S.E.2d 451, 455 ("[N]one of these documents was signed by a representative of the Board . . . or a representative of the University of Georgia.").[5]

Ultimately, though, we agree with the Board that the letter is not a written contract for purposes of the sovereign immunity waiver because "[i]t is devoid of any express promises or obligations." In *Tyson*, 404 S.E.2d at 558, the plaintiff asserted that his written contract with the Board "was made up of all the records the [university] hospital kept regarding [the plaintiff], especially a document entitled 'Consent to Hospital Care.'" The Georgia Supreme Court rejected that argument in part because "nowhere in the hospital record[s] . . . [was] any signed writing establishing the essential term of consideration moving to the contract." *Id.* at 559

---

[5] The Board claims in a conclusory manner that Ms. Miller lacks authority to bind it to a contract. It also argues that even if the admission letter constituted a contract, Mr. Waller did not plausibly allege that being dismissed from the Respiratory Therapy Program constituted a breach of this contract. Given our disposition, we do not address these issues.

(quotation marks omitted).  And "[u]nless all of the[ ] essential terms are in writing, there is no enforceable written contract for sovereign immunity purposes." *Justice*, 907 S.E.2d at 822 (quoting *Fed. Def. Program*, 882 S.E.2d at 274).

The same is true here.  Nothing in the admission letter establishes or sets out what Mr. Waller must give to MGS as consideration in exchange for his admission to the Respiratory Therapy Program.  That omission is fatal to his argument that he and the Board had a "written contract" waiving the Board's sovereign immunity.

Mr. Waller emphasizes that the letter "refers to a mandatory orientation program" and "requires [his] agreement to additional 'important information' [contained] in an attachment."  But attending the mandatory orientation program is merely a condition that Mr. Waller must satisfy to attain the benefit that MGS is conferring to him: admission into the Respiratory Therapy Program.  It is not a bargained-for benefit to MGS.  *Cf. Patel v. Patel*, 877 S.E.2d 846, 849 (Ga. App. 2022) ("Pretermitting whether Prakash benefitted from Shama's transfer of her interest in the house, Shama's transfer . . . constitutes consideration for Prakash's promise only if it was 'sought by [Prakash] in exchange for his promise and [was] given by [Shama] in exchange for that promise.'") (quoting O.C.G.A. § 13-3-42(b)).  *See generally* 3 Williston on Contracts § 7:19 (4th ed. & May 2026 update) ("[A] condition of a promise[ ] may or may not be consideration, depending upon whether a reasonable person would . . . understand that the performance of the condition was

requested as the price or exchange for the promise."). As for the "additional important information" in the attachment, the complaint does not say what that information was.

Although we could speculate that Mr. Waller paid tuition for the privilege of attending MGS—just as we could speculate that the hospital in *Tyson* expected to receive compensation for its services—the admission letter does not specify *in writing* any "consideration moving to the contract." That is what Georgia's sovereign immunity waiver for written contracts requires.

Finally, Mr. Waller's theory that the admission letter and the Handbook together formed a written contract also fails because the Handbook does not supply the essential term that the letter is missing. Like the letter, the Handbook does not specify in writing what benefit Mr. Waller agreed to confer upon MGS. Mr. Waller contends that, "[i]n consideration for their ability to attend [MGS], along with payment of tuition and other fees, students were required to sign these written agreements that they would follow these written policies and procedures[.]" But, as with the orientation program, Mr. Waller's promise to adhere to the Handbook's policies is a condition on *his* benefit (receiving an education at MGS). The benefit that MGS "sought" and that Mr. Waller gave "in exchange for" that education, *see* O.C.G.A. § 13-3-42(b), was presumably the "tuition and other fees" to which the complaint refers. But nowhere in either of the two documents on which Mr. Waller relies is there any reference to what consideration he was

required to give. Thus, no document or combination of documents contains all the essential terms of a valid contract waiving sovereign immunity.

As the Georgia Court of Appeals said in *Patrick*, 855 S.E.2d at 749, Mr. Waller's admission letter and the Handbook "might demonstrate the existence of an implied contract[.]" *See also Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 868 (11th Cir. 2023) ("[T]he relationship between a student and . . . university is essentially contractual in nature[.]") (quotation marks omitted). But "that is not enough to waive sovereign immunity." *Patrick*, 855 S.E.2d at 749. *Accord RTT Assocs., Inc.*, 786 S.E.2d at 843–44. Because Mr. Waller has not plausibly alleged the existence of written contract waiving sovereign immunity, the district court properly dismissed his breach of contract claim against the Board.

## III

We now turn to Mr. Waller's claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. "To state a claim under either Title II or § 504, a plaintiff must establish (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (quotation marks omitted).

As noted, to survive a motion to dismiss, a plaintiff must plead a facially plausible claim. That is, he must set out sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The operative complaint alleges that one of Mr. Waller's instructors, Ms. Pope, communicated to Ms. Miller and Ms. Brown that Mr. Waller "display[ed] a sort of nervous anxiety" and made "some inappropriate statements" that was "making the staff uncomfortable." Yet the complaint then states that Ms. Pope's opinion of Mr. Waller "did not result in any academic or disciplinary infraction" for Mr. Waller.

The complaint also alleges that Ms. Miller, Ms. Brown, Dr. Stewart, and Dr. Underwood discussed Mr. Waller's conditions, including ADD, anxiety, and depression. Those discussions culminated in Dr. Stewart's request that Mr. Waller provide certification from a psychiatrist or psychologist that he could withstand the stress of caring for patients.

Next, the complaint alleges that three Houston Hospital employees perceived that Mr. Waller's performance was unsatisfactory due to his ADD, anxiety, and depression and that they communicated these feelings to their supervisors. The supervisors then passed those comments on to Ms. Miller, Ms. Brown, and others at MGS.

But what is noticeably absent from the complaint is any non-conclusory allegation suggesting that Mr. Waller was subject to an

adverse action *because of* his conditions.  He alleges that the Houston Hospital employees' complaints "led to [his] being removed as a student" at MGS, that the defendants' knowledge of his conditions "denied [him] the opportunity to participate in and benefit from the clinical externship," and that the "[d]efendants' actions and omissions against [him] were taken solely on the basis of [his] disabilities."  But these allegations, devoid of factual support, are merely "[t]hreadbare recitals of the elements of [the] cause of action." *Iqbal*, 556 U.S. at 678.

The complaint does not identify which individuals took which actions because of Mr. Waller's disabilities.  The complaint speculates that, in light of prior negative comments surrounding his conditions or behavior, the defendants removed Mr. Waller from the hospital and gave him an "F" because of those conditions.  But that is implausible given the other factual allegations.  According to the complaint, Mr. Waller was disciplined because Houston Hospital and at least seven different employees at MGS believed that he had endangered the safety of a patient.  Mr. Waller alleges that those beliefs are mistaken and that his disciplinary hearing did not adhere to MGS' policies.  We express no view on those allegations, but regardless of whether the defendants' beliefs were correct, the complaint does not permit a reasonable inference that they punished or disciplined Mr. Waller because of his conditions.  The district court therefore correctly dismissed the Title II and § 504 claims under Rule 12(b)(6).

24-13307              Opinion of the Court                    19

## IV

We affirm the dismissal of Mr. Waller's breach of contract, ADA, and Rehabilitation Act claims.

**AFFIRMED.**